**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

Civil Action No. 1:25-cv-00225-SWS

**MENDOCINO RAILWAY, a California corporation**,

Plaintiff,

v.

**HOPPER METALS, INC., a Wyoming corporation**, **and Michael Dimick, an individual**

Defendants.

---

**AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff Mendocino Railway ("Mendocino"), through its attorneys, Hall & Evans, LLC, complains, states and alleges against Defendants Hopper Metals, Inc. and Michael Dimick, as follows:

**PARTIES**

1. Plaintiff Mendocino Railway ("Mendocino" or "Plaintiff") is a California corporation with its principal place of business located at 1655 Da Vinci Court, Davis, California 95618, and authorized to transact business in the State of Wyoming.

2. Defendant Hopper Metals, Inc. ("Hopper") is a Wyoming corporation, with a principal place of business located at 405 1st St., Shoshoni, Wyoming, 82649, and authorized to transact business in the State of Wyoming.

3. Defendant Michael Dimick ("Mr. Dimick") is an individual and a resident of the State of Wyoming. Upon information and belief, Mr. Dimick resides at 622 Burma Road, Riverton, Wyoming, 82501.

**JURISDICTION AND VENUE**

4. Jurisdiction is proper in this Court based upon diversity jurisdiction under 28 U.S.C. §§ 1441, 1446, and 1332, as federal courts have diversity jurisdiction in lawsuits between citizens

of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332.

5. Venue is proper in this Court because the tortious actions of Defendants occurred in the Federal District of Wyoming, and because Hopper is incorporated and headquartered in Wyoming and Mr. Dimick is a resident of Wyoming.

## GENERAL ALLEGATIONS

6. Mendocino is a railroad company that is in the business of operating trains and railway cars.

7. Hopper is a scrapyard company that is in the business of selling scrap metals including aluminum and steel.

8. Mr. Dimick is the president of Hopper.

9. This case arises out of Mr. Dimick and Hopper's conversion of Mendocino's property – valuable scrap metal from railcars - that were being used for a project in Shoshoni, Wyoming.

10. In spring 2021, Mendocino purchased sixty (60) former coal railcars from MRD Group, Inc. for use in a new passenger train called the "Iron Sherpa" which it intended to operate in California.

11. In May of 2021, Mendocino entered into a *Railcar Construction Agreement* (hereinafter the "Agreement") with Wasatch Railroad Contractors ("WRC") for the purpose of modifying fifty (50) of Mendocino's recently purchased coal railcars into passenger hotel cars for use on the Iron Sherpa train.

12. The Agreement provided that WRC was to dismantle most of the railcars' bodywork before beginning to construct new car bodies for their use as hotel cars.

13. The Agreement also called for WRC to sell any scrap metal or components taken from the railcars and to use those proceeds to offset the cost of constructing the new hotel cars, and provided that if the scrap's value exceeded the contract price, any overage would be paid to Mendocino.

14. The Agreement thus contemplated that (a) the scrap metal and equipment from Mendocino's railcars had value; and (b) Mendocino would retain ownership over the scrap metal and equipment from those cars until it was sold and the proceeds remitted to Mendocino.

15. Fifty (50) of Mendocino's coal cars were subsequently transported to Shoshoni, Wyoming for WRC to begin the process of dismantling the railcars to remove the valuable metal

DRAFT

siding and other components so that the flat bases of the cars could be used to build hotel cars upon.

16. WRC commenced with dismantling and scrapping the railcars.

17. However, before the project could be completed, WRC experienced financial difficulties and halted their work on the project.

18. On May 4, 2022, Robert Pinoli, President of Mendocino, visited Shoshoni, Wyoming to investigate the status of the railcars and missing Subject Property.

19. On said date, Mr. Pinoli met with Dave Nelson, President of Bighorn Divide & Wyoming Railroad, which had leased property to WRC for its operations.

20. While on site, Mr. Pinoli identified and accounted for portions of all fifty (50) of Plaintiff Mendocino's railway cars in various states of disassembly.

21. Although he identified portions of Mendocino's cars, Mr. Pinoli observed that a large quantity of the scrap metal and equipment from the disassembled cars (the "Subject Property") was not present at the former WRC site.

22. Based on Mr. Pinoli's observations at the scene, and upon information and belief, the value of the missing Subject Property was approximately $189,960 in aluminum and an additional $38,500 in steel.

23. Mendocino subsequently learned that the missing Subject Property had been transferred to Hopper and/or Mr. Dimick sometime in the fall of 2021.

24. Mendocino first learned that Hopper and Mr. Dimick were wrongly exercising possession over the Subject Property less than four (4) years from the date of this suit.

25. Mendocino subsequently demanded to Mr. Dimick that Hopper return the missing Subject Property or provide monetary compensation for same.

26. Less than four (4) years from the date of this suit, Mr. Dimick and Hopper refused to provide Plaintiff Mendocino with its missing Subject Property and refused to provide any compensation.

## FIRST CLAIM FOR RELIEF
## (Conversion Against Defendants Hopper and Mr. Dimick)

27. Plaintiff Mendocino hereby incorporates by reference the preceding paragraphs above as though fully set forth herein.

DRAFT

28. At all times relevant, Plaintiff Mendocino had legal title and the right to possess the Subject Property.

29. At all times relevant, Defendant Hopper and Mr. Dimick exercised control or dominion over the Subject Property and by refusing to return the Subject Property to Plaintiff, thereby denied Plaintiff its right to use and enjoy the Subject Property.

30. Defendants Mr. Dimick and Hopper also refused Plaintiff Mendocino's demand for return of the Subject Property after Plaintiff informed it that the Subject Property belonged to Plaintiff.

31. Plaintiff Mendocino has suffered damages by the loss of the Subject Property and Defendants' refusal to return it or fairly compensate Plaintiff for it.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mendocino Railway prays for relief and requests the Court enter judgment in its favor as follows:

1. For Plaintiff Mendocino's actual damages, costs of suit, fees of experts, attorney fees, interest as permitted by law from the date of occurrence to the date of entry of judgment, as well as post-judgment interest until paid; and

2. For such other and further relief as the Court deems just and proper.

**JURY DEMAND**

**PLAINTIFF MENDOCINO DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 7th day of November, 2025.

Respectfully Submitted,

By: */s/ Andrew Reitman*________________
Andrew P. Reitman, #7-5946
HALL & EVANS, LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202
(303) 628-3300
reitmana@hallevans.com
**ATTORNEYS FOR PLAINTIFF MENDOCINO RAILWAY**

DRAFT