FILED

UNITED STATES DISTRICT COURT DISTRICT OF WYOMING

3:38 pm, 6/1/26

Margaret Botkins
Clerk of Court

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

MENDOCINO RAILWAY, a California corporation,

Plaintiff,

v.

HOPPER METALS, INC., a Wyoming corporation, and MICHAEL DIMICK, an individual,

Defendants.

Case No. 25-CV-225-SWS

**ORDER GRANTING DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

Plaintiff Mendocino Railway alleges Defendants Hopper Metals and Michael Dimick unlawfully converted certain scrap metal belonging to Mendocino Railway. Defendants have moved to dismiss the operative amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim on which relief can be granted. Having considered the parties' arguments and reviewed the amended complaint, the Court grants the request for dismissal.

**STANDARD OF ADJUDICATION FOR RULE 12(b)(6) MOTIONS TO DISMISS**

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal of a cause of action or complaint that fails "to state a claim upon which can be granted." "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Dismissal under Rule 12(b)(6) generally occurs where the complaint

fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, a complaint's factual allegations, assumed to be true, must "be enough to raise a right to relief above the speculative level." *Id.* at 555. The allegation of facts controls whether a claim is plausible because "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. The Court accepts the nonmoving party's well-pled factual allegations as true, but the Court is not bound to accept an asserted legal conclusion as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

## FACTUAL ALLEGATIONS

Applying the standard for Rule 12(b)(6) motions set forth above, Mendocino Railway's amended complaint asserts the following pertinent facts.

Mendocino Railway is a railroad company that operates trains and railway cars. (Am. Compl. ¶ 6.) Hopper Metals is a scrapyard company that buys and sells scrap metals, including aluminum and steel, and Mr. Dimick is the president of Hopper Metals. (*Id.* ¶¶ 7-8.)

In May 2021, Mendocino Railway contracted with a third party, Wasatch Railroad Contractors, whereby Wasatch would turn 50 of Mendocino's coal railcars into passenger hotel cars. (*Id.* ¶¶ 10-11.) Mendocino sent 50 coal cars to Wasatch's location in Shoshoni, Wyoming, where Wasatch began "dismantling the railcars to remove the valuable metal siding and other components so that the flat bases of the cars could be used to build hotel cars upon." (*Id.* ¶ 15.) The agreement "called for [Wasatch] to sell any scrap metal or components taken from the railcars and to use those proceeds to offset the cost of constructing the new hotel cars," with any surplus

proceeds from Wasatch's sale of the scrap metal to be remitted to Mendocino. (*Id.* ¶¶ 13-14.)

The Mendocino-Wasatch agreement did not work out though. Mid-project, Wasatch "experienced financial difficulties and halted [its] work on the project." (*Id.* ¶ 17.)

In May 2022, a Mendocino representative visited Shoshoni, Wyoming, to investigate the status of the project. (*Id.* ¶ 18.) While on site at Wasatch's (now-former) business location, the representative "identified and accounted for portions of all fifty (50) of Plaintiff Mendocino's railway cars in various states of disassembly." (*Id.* ¶¶ 19-20.) He also observed that a large amount of the scrap metal and equipment from the disassembled cars was not present at the site, which Mendocino values at over $200,000. (*Id.* ¶¶ 21-22.)

Mendocino subsequently learned that the missing scrap metal and equipment "had been transferred to Hopper and/or Mr. Dimick sometime in the fall of 2021." (*Id.* ¶ 23.) Mendocino contacted Defendants to demand they transfer the missing scrap and equipment to Mendocino or, alternatively, pay monetary compensation to Mendocino. (*Id.* ¶ 25.) Defendants have refused Mendocino's demand. (*Id.* ¶ 26.)

## DISCUSSION

Mendocino now brings this lawsuit, claiming it held legal title and the right of possession to the subject scrap metal and equipment[1] at all relevant times and Defendants have wrongfully converted the property. (Am. Compl. ¶¶ 27-31.) Defendants contend the lawsuit must be dismissed because Mendocino has failed to state a plausible claim of conversion. (ECF 14.)

In a diversity action such as this, the Court applies the forum state's substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Under Wyoming law, the tort

[1] Hereinafter, the Court uses the phrase "scrap metal" to refer to all items at issue in this lawsuit that Wasatch stripped from the coal cars and that "had been transferred" to Defendants.

of conversion "occurs when a person treats another's property as his own, denying the true owner the benefits and rights of ownership." *Lieberman v. Mossbrook*, 208 P.3d 1296, 1304 (Wyo. 2009). To prove a claim of conversion, a plaintiff must establish the following:

(1) The plaintiff held legal title to the property;

(2) The plaintiff possessed the property or had the right to possess the property at the time of the conversion;

(3) The defendant exercised dominion over the property in a manner that denied the plaintiff his rights to use and enjoy the property;

(4) In those cases where the defendant obtained possession of the property lawfully or without fault, the plaintiff made a demand for the property's return which the defendant has refused; and

(5) The plaintiff has suffered harm from the property loss.

*McCall v. Best of the West Prods., LLC*, 583 P.3d 1221, 1229 (Wyo. 2026). Additionally, "[o]ne who would otherwise be liable to another for … conversion is not liable to the extent that the other has effectively consented to the interference with his rights." *Campbell v. Davidson*, 537 P.3d 734, 744 (Wyo. 2023) (quoting Restatement (Second) of Torts § 252 (1965)); *see Seay v. Vialpando*, 567 P.2d 285, 289 (Wyo. 1977) ("A claim for conversion, however, is barred if the plaintiff expressly or implicitly assents to or ratifies the use of his property.").

Defendants here argue the amended complaint fails to allege facts that plausibly show Mendocino Railway maintained ownership of or a right to possess the scrap metal stripped from the coal cars by Wasatch after it left Wasatch's possession. (ECF 15 p. 9.) Thus, Defendants have focused their attack on the first and second elements of the conversion claim.

In its response, Mendocino Railway says its agreement with Wasatch provided that "Mendocino would retain ownership of the scrap metal until it was sold and proceeds remitted to Mendocino." (ECF 18 p. 5 (citing Am. Compl. ¶¶ 10-14).) Similarly, in Paragraph 14 of the

amended complaint, Mendicino asserted, "The Agreement thus contemplated that … Mendicino would retain ownership over the scrap metal and equipment from those cars until it was sold and the proceeds remitted to Mendocino." (Am. Compl. ¶ 14.) Such a scenario is contrary to law, though. The immediately-preceding paragraph in the amended complaint confirms that Wasatch, acting as Mendocino's agent, had express authority, and even a contractual duty, to sell the scrap metal it stripped from the coal cars:

> The Agreement also called for [Wasatch] to sell any scrap metal or components taken from the railcars and to use those proceeds to offset the cost of constructing the new hotel cars, and provided that if the scrap's value exceeded the contract price, any overage would be paid to Mendocino.

(Am. Compl. ¶ 13.) Because Wasatch had authority to sell the scrap metal, any bona fide purchaser for value would necessarily receive good title (and the right of possession) when buying the scrap metal from Wasatch.[2] *See McInerney & Conway Fin. Corp. v. Smith*, 295 P. 273, 277 (Wyo. 1931) ("If the purchaser gets a good title, it must be upon the ground that the agent had the right to sell."); *id.* ("There was authority to sell, and, that being so, the sale on a credit was a mere violation of instructions as to the terms of sale. Such a sale would pass title, unless the purchaser knew of the violation of instructions …."). In short, Mendicino Railway could not authorize Wasatch to sell the scrap metal and also lawfully retain ownership or a right of possession over the scrap metal after Wasatch sold it. Moreover, even assuming Mendocino and Wasatch could agree as alleged, such an agreement would not be binding on Defendants, who are not alleged to be parties to the

---

[2] To be sure, if Wasatch lacked authority to sell the scrap metal, then Wasatch would potentially be liable for conversion if it sold the scrap metal, and any buyer, including a bona fide purchaser for value, would also potentially be liable for conversion. *See Kenyon v. Abel*, 36 P.3d 1161, 1165 (Wyo. 2001) ("a converter has no title whatsoever (i.e., his title is void) and, therefore, nothing can be conveyed to a bona fide purchaser for value"). In this case, though, Mendocino has expressly asserted Wasatch had authority under their agreement to sell the scrap metal it removed from the railcars. (Am. Compl. ¶ 13.)

Mendocino-Wasatch agreement. Accordingly, this assertion in the amended complaint does not help Mendicino Railway plausibly allege its continuing ownership of and right to possess the scrap metal that "had been transferred to" Defendants (Am. Compl. ¶ 23).

The Court understands that Mendocino Railway has not alleged that Wasatch actually sold the scrap metal to Defendants (or to anyone else), or that it was Wasatch who transferred the scrap metal to Defendants. (*See, generally*, Am. Compl.) Indeed, it certainly appears that Mendocino has gone to great lengths not to allege as much, instead passively saying it "subsequently learned" that the scrap metal "had been transferred to" Defendants. (Am. Compl. ¶ 23.) But relying on vague conclusory allegations without supporting facts as to how Defendants received the scrap metal, particularly in the face of the agreement that required Wasatch to sell the scrap metal, does not help Mendocino to push its conversion claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570; *see Morris v. Thaler*, 425 F. App'x 415, 421 (5th Cir. 2011) (conclusory allegations are "vague, lacking in specifics, or amount to mere recitations of the relevant legal standards without any supporting factual narrative").

Further, Mendocino Railway's conclusory legal assertion that Defendants "were wrongly exercising possession over the" scrap metal (Am. Compl. ¶ 24) is not made plausible by Mendocino's factual allegations. The amended complaint's factual allegations show: (1) Defendants are in the business of buying and selling scrap metal, (2) Wasatch had a contractual obligation to sell the scrap metal removed from Mendocino's coal cars, and (3) the scrap metal "had been transferred" to Defendants. (Am. Compl. ¶¶ 7, 13, 23.) From these operative factual allegations, it is not plausible that Defendants "wrongly" possessed the scrap metal. To plausibly plead wrongful possession by Defendants, Mendocino would have to allege some facts to prop up the assertion, such as the scrap metal having first been stolen from Wasatch or Wasatch having

sold the scrap metal after its authorization for doing so had been revoked, but the amended complaint lacks any such supporting factual allegations.[3] Defendants are correct that the most reasonable inference from the factual allegations presented in the amended complaint is that Wasatch sold the scrap metal to Defendants in the fall of 2021 under its contractual authority and obligation to do so (ECF 15 p. 11), but even ignoring that inference, the Court nonetheless determines Mendocino has not plausibly alleged its ownership and right of possession over the scrap metal that "had been transferred" to Defendants. It is feasible that after the scrap metal "had been transferred" to Defendants, they "were wrongly exercising possession over" it, but pleading conduct that is "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 557 (quotation marks omitted).

In short, Mendocino Railway's amended complaint fails to state a claim of conversion on which relief can be granted because it does not plausibly allege facts to support the first two elements of conversion—ownership and possessory rights. The amended complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## **CONCLUSION AND ORDER**

There are just too many holes in the alleged facts for a plausible claim of conversion to exist. While Mendocino's vagueness and conclusory allegations certainly strike the Court as purposeful, they cannot carry its claim to plausibility. *See United States v. Woodmore*, 135 F.4th 861, 878 (10th Cir. 2025) (courts "should dismiss claims which are supported only by vague and conclusory allegations") (quoting *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992)).

[3] Of course, under Fed. R. Civ. P. 11, such allegations must have evidentiary support or be reasonably likely to have evidentiary support after an opportunity for investigation.

It appears Mendocino has filed this lawsuit in an attempt to find out whether a claim of conversion might exist, but the applicable pleading standard first requires it to show that a plausible claim already exists. "Rule 8 … does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678.

Dismissal under Rule 12(b)(6) is usually, and in this case will be, without prejudice. Accordingly, Mendocino Railway may refile an action against Defendants if further pre-suit investigation into the matter reveals some facts that better support a claim of conversion (or a different cause of action).

**IT IS THEREFORE ORDERED** that the Defendants' Joint Motion to Dismiss First Amended Complaint (ECF 14) is **GRANTED**. The amended complaint, and its sole cause of action for conversion, are hereby **DISMISSED WITHOUT PREJUDICE**. The Clerk of Court will please enter a general judgment of dismissal in favor of Defendants and then close this case.

**ORDERED:** June 1st, 2026.

Scott W. Skavdahl
United States District Judge