Andrew P. Reitman, Esq., Wyo. #7-5946
HALL & EVANS, L.L.C.
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202-2052
Telephone: 303-628-3300
Facsimile: 303-628-3368
Email: reitmana@hallevans.com

*Attorney for Plaintiff Mendocino Railway*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| MENDOCINO RAILWAY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOPPER METALS, INC., a Wyoming corporation, and MICHAEL DIMICK, an individual<br><br>Defendants. | Case No. 1:25-cv-00225-SWS |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS COMBINED MOTION TO ALTER OR AMEND THE COURT'S JUDGMENT AND MOTION FOR LEAVE TO AMEND ITS AMENDED COMPLAINT**

---

Plaintiff Mendocino Railway ("Mendocino"), through its attorneys, Hall & Evans, LLC, hereby submits its Brief in Support of its Combined Motion to Alter or Amend the Court's Judgment dismissing Plaintiff's Amended Complaint without prejudice per F.R.C.P. 59(e) and Motion for Leave to Amend its Amended Complaint per F.R.C.P. 15(a)(2), and in support states as follows:

## INTRODUCTION

On June 1, 2026, this Court entered an Order and Judgment Dismissing Mendocino's First Amended Complaint Without Prejudice. (ECF. No. 20). The Court found that Mendocino failed to plausibly allege facts to support a claim for conversion but invited Mendocino to refile if further investigation revealed sufficient facts to support its claim. *Id.* at p. 8. Since then, Mendocino has uncovered additional facts and has repleaded its complaint to address the deficiencies identified by the Court and support a claim for conversion as well as an additional claim for unjust enrichment. *See generally* **Exhibit A**, Mendocino's Proposed Second Amended Complaint ("SAC").[1] However, because the statute of limitations has run since the filing of Mendocino's Amended Complaint, Mendocino may not simply refile a new complaint as the Court's order contemplated. *See* Wyo. Stat. Ann. § 1-3-105(a)(iv)(B); *Gustafson v. Bridger Coal Co.*, 834 F. Supp. 352, 357 (D. Wyo. 1993). Rather, Mendocino's only course is to move the Court to alter or amend its Judgment under Rule 59(e) and to seek leave to file its proposed SAC under Rule 15(a)(2).

As Mendocino demonstrates below, Rule 15(a)(2)'s liberal amendment standard governs this motion, and thus leave should freely be given unless there is a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment. *Yellow Corp. v. Int'l Bhd. of Teamsters*, No. 24-3111, 2025 WL 3089412, at *5 (10th Cir. Nov. 5, 2025). In any event, even if the Court determines Rule 59(e) is the correct standard, amending the Court's Judgment is necessary to prevent manifest injustice. Because the statute of limitations has lapsed, refusing to permit

[1] Per Local Rule 15.1, a redlined copy of the Second Amended Complaint reflecting all changes from the Amended Complaint (ECF. No. 6) is attached as **Exhibit B**.

Mendocino to replead its claims would effectively deny it a merits determination based on curable pleading defects.

## FACTUAL BACKGROUND

1. Mendocino filed its original Complaint on September 26, 2025, alleging conversion against Hopper Metals, Inc. ("Hopper"). (ECF. No. 1).

2. On November 7, 2025, and before Hopper responded, Mendocino filed its Amended Complaint alleging the same claim but adding Michael Dimick as a party. (ECF. No. 6).

3. On December 17, 2025, after some difficulty, Mendocino served Defendants. (ECF. No. 10).

4. On January 7, 2026, Defendants filed a Motion requesting a 30-day extension to respond to the Amended Complaint. (ECF. No. 11).

5. The next day, the Court granted the Motion and Ordered Defendants to Answer or otherwise respond on or before February 6, 2026. (ECF. No. 12).

6. In lieu of Answering, Defendants filed a Joint Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6), which was fully briefed on March 5, 2026. (ECF. Nos. 14, 15, 18, 19).

7. On June 1, 2026, the Court entered an Order and Judgment dismissing Mendocino's Amended Complaint Without Prejudice. (ECF. Nos. 20, 21).

8. After the Court's June 1, 2026, Order, Mendocino interviewed Mr. John Rimmasch, former owner of Wasatch Railroad Contractors ("WRC"), conducted further investigation, and obtained supplemental information responsive to the Court's concerns.

9. Mr. Rimmasch provided additional details regarding the agreement between WRC and Defendants to sell Mendocino's scrap metal and how Defendants wrongfully obtained

possession of Mendocino's scrap metal, sold it to a scrap yard in Utah, and retained the proceeds therefrom.

10. Based on further review, synthesis, and confirmation of witness information and documents, Mendocino has prepared its SAC addressing the deficiencies identified by the Court. (Exhibit A).

11. The statute of limitations for Mendocino's claims lapsed prior to the Court's June 1, 2026, Order, meaning that the Court's order dismissing Mendocino's complaint effectively did so *with prejudice*.

## LEGAL ARGUMENT AND AUTHORITY

### A. Rule 15(a)(2) is the Proper Standard to Apply to the Relief Mendocino Requests

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely if it appears at all possible that the plaintiff can correct the defect." *Triplett v. LeFlore Cnty.*, 712 F.2d 444, 446 (10th Cir. 1983) (internal quotation marks omitted). Generally, leave to amend is not freely given once there has been an entry of judgment. *Yellow Corp.*, 2025 WL 3089412, at *5 (citing *Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005)). However, the Tenth Circuit recently clarified that Rule 15(a)(2)'s liberal amendment standard governs post-judgment motions for leave to amend "where a district court enters judgment at the same time it first dismisses a case." *See id*. (quoting *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017, 1033 (7th Cir. 2024)) ("Rule 15(a)(2) provides the standard for evaluating post-judgment motions for leave to amend in situations, like this one, where a district court enters judgment at the same time it first dismisses a case."); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) ("The *Foman* holding cannot be reconciled with

the proposition that the liberal spirit of Rule 15 necessarily dissolves as soon as final judgment is entered.").

In *Yellow*, the district court granted the defendant's motion to dismiss under 12(b)(6), finding that the plaintiff had failed to exhaust the contractual grievance procedures prior to filing suit. *Id*. at *3. The plaintiff filed a post-judgment motion under Rule 59(e), arguing, in part, that it had discovered new evidence and requested leave to amend its complaint under Rule 15(a)(2). *Id*. at *4. The district court denied the motion, reasoning that, because there was no cause to set aside the judgment under Rule 59(e), it must also deny leave to amend. *Id*. at *5. The Tenth Circuit Court of Appeals reversed and remanded with direction to grant the plaintiff leave to amend. *Id*. at *10. It found that the district court committed error and abused its discretion by applying the typical Rule 59(e) standard rather than freely granting leave to amend per Rule 15(a)(2). *Id*. at *5. The court reasoned that:

> Because the district court entered judgment at the same time it granted the motion to dismiss, [the plaintiff] had limited opportunity to correct its complaint. This differs sharply from our prior cases where "the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave." *Tool Box*, 419 F.3d at 1088. To deny [the plaintiff] the opportunity to amend in these circumstances would be a decision that "rest[s] on 'technicalities' that r[u]n contrary to 'the spirit of the Federal Rules of Civil Procedure.'" *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 215 (2025) (quoting *Foman*, 371 U.S. at 181–82). While [the plaintiff] was still required to file under Rule 59(e) as a procedural mechanism, **the standard for granting the motion is set by Rule 15(a)(2).**

*Id*. at *5 (emphasis added).

Here, the same principles apply. The Court entered judgment the same day that it granted Defendants' Motion to Dismiss. Because of this, Mendocino had no opportunity to correct its Amended Complaint or seek leave to amend before the entry of judgment. This is not a situation like *Tool Box*—or the cases cited by *Tool Box*—where the plaintiff had opportunities to amend yet

waited to seek leave until trial concluded or until after the court of appeals affirmed the trial court's grant of summary judgment. 419 F.3d at 1086, 1088. In the instant case, Mendocino has not even had the opportunity to conduct formal discovery. While Mendocino has amended its Complaint once, that was merely to add Michael Dimick as a party, and at the time of that amendment, Mendocino did not possess the information it currently does. Mendocino has been diligent in pre-suit investigation and informal discovery, and this Motion is Mendocino's first meaningful opportunity to correct the deficiencies identified by the Court's June 1 order. Thus, as the Tenth Circuit concluded in *Yellow*, this motion is governed by the standard outlined in Rule 15(a)(2), and to deny Mendocino an opportunity to amend in these circumstances would be a decision that "rest[s] on 'technicalities' that r[u]n contrary to 'the spirit of the Federal Rules of Civil Procedure.'" *Yellow Corp.*, 2025 WL 3089412, at *5 (citing *Honickman*, 605 U.S. at 215 (quoting *Foman*, 371 U.S. at 181–82)).

**B. The Court Should Grant Mendocino Leave to Amend its Amended Complaint.**

Under Rule 15(a)(2), "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). None of these factors support denying leave here.

Defendants will suffer no prejudice by granting Mendocino leave to amend. The proposed SAC concerns the same parties and is based on the same underlying dispute. Defendants will not be forced to defend a new case; they will be defending the same dispute with the additional factual detail the Court identified as necessary.

Nor is there any bad faith, undue delay, or repeated failure to cure. Mendocino has only had the opportunity to conduct informal investigation, has diligently pursued interviews and

documents from those willing to cooperate, and now promptly seeks its first meaningful opportunity to cure the deficiencies identified by the Court.

Finally, the amendment is not futile. In its June 1, 2026, Order, the Court explained that Mendicino failed to "plausibly allege its continuing ownership of and right to possess the scrap metal that 'had been transferred to' Defendants" and relied on vague, "conclusory allegations without supporting facts as to how Defendants received the scrap metal," or how Defendants wrongfully possessed the scrap metal. (ECF. No. 20 at p. 6-7).

The proposed SAC cures those deficiencies. It does not ask for discovery based on speculation; it pleads concrete facts responsive to the Court's Order. First, instead of the prior vague allegation that scrap "had been transferred" to Defendants, the SAC alleges that Defendants obtained Mendocino's scrap in two distinct phases. In phase one, Defendants obtained the First Load through WRC's authorized first-load sale process.[2] After taking the First Load, but before issuing payment, however, Defendants told WRC that they would not be issuing full payment as initially agreed because WRC allegedly owed Defendants money for reasons unrelated to Mendocino. Mr. Rimmasch reminded Defendants that Mendocino owned the scrap metal and that Defendants could not use the scrap metal proceeds to offset WRC's debt. Defendants nonetheless refused to remit the full amount of the proceeds from the sale of the First Load of scrap metal. Accordingly, WRC told Defendants that Mendocino would not accept the decreased price and did not authorize Defendants to pick up any more loads of scrap metal. To date, neither WRC nor Mendocino has received compensation for the First Load of scrap metal. This represents just one aspect of Mendocino's conversion and unjust enrichment claims.

[2] This First Load of scrap metal was the only load that Defendants lawfully obtained. However, Defendants unlawfully retained the proceeds from the sale of the First Load.

In phase two, WRC had closed its yard and filed for bankruptcy. At that time, there was still a substantial amount of scrap metal from Mendocino's disassembled coal cars remaining on WRC's land (the "Remaining Scrap Metal"). Upon information and belief, Defendants—without authorization from WRC or Mendocino—entered WRC's land, took the Remaining Scrap Metal from Mendocino's disassembled cars, sold it to a scrap yard in Utah, and kept the proceeds. This is confirmed by Defendants' filings in the WRC bankruptcy action, where Mr. Dimick admits to obtaining 160,000 pounds of scrap metal from Mendocino's coal cars. *See* **Exhibit C**, Hopper and Mr. Dimick's Bankruptcy Pleading, p. 2; *see also* **Exhibit D,** Declaration of John Rimmasch, ¶¶ 24-27. To be clear, the First Load (the *only* authorized load of scrap Defendants took) did not amount to 160,000 pounds. **Exhibit D** at ¶ 24. Thus, Defendants have essentially admitted to taking Mendocino's Remaining Scrap Metal without authorization. In fact, Mendocino believes it knows where in Utah Defendants sold the Remaining Scrap Metal, however, the scrap yards in Utah refused to provide any evidence or details regarding the sale without a subpoena ordering them to do so.

These additional facts are more than sufficient to cure the deficiencies identified by the Court and support plausible claims for both conversion and unjust enrichment, and there are no other justifications to deny Mendocino's motion to amend. Furthermore, as explained below, justice requires the Court to grant Mendocino leave to amend, because otherwise, its claims may be permanently extinguished, and it will be foreclosed from receiving fair and just adjudication on the merits of its claims. *See Foman*, 371 U.S. at 182 ("[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Under Rule 15's governing standard, Mendocino should be permitted to amend its complaint.

**C. Even Under Rule 59(e), Amending the Court's Judgment is Necessary to Prevent Manifest Injustice.**

"Grounds for granting a Rule 59(e) motion include '(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice.'" *Somerlott v. Cherokee Nation Distribs., Inc.*, 686 F.3d 1144, 1153 (10th Cir. 2012) (quoting *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

In the Court's June 1, 2026, Order dismissing Mendocino's Amended Complaint without prejudice, it appears the Court did not consider the statute of limitations in its analysis. In its conclusion, the Court stated: "Dismissal under Rule 12(b)(6) is usually, and in this case will be, without prejudice. Accordingly, Mendocino Railway may refile an action against Defendants if further pre-suit investigation into the matter reveals some facts that better support a claim of conversion (or a different cause of action)." ECF. No. 20 at p. 8. This statement indicates that the Court intended to provide Mendocino with an opportunity to correct the deficiencies it identified and refile. However, that opportunity is not available as the statute of limitations has run.

"A federal court sitting in diversity applies state law for statute of limitations purposes." *Dana v. Anderson*, 163 F. Supp. 3d 1143, 1146 (D. Wyo. 2016) (quoting *Burnham v. Humphrey Hospitality Reit Trust, Inc.*, 403 F.3d 709, 712 (10th Cir. 2005)). Wyoming applies a four-year statute of limitations for actions involving "the recovery of personal property or for taking, detaining or injuring personal property." Wyo. Stat. Ann. § 1-3-105(a)(iv)(B). Courts in the District of Wyoming have consistently applied this provision to conversion claims. *See Gustafson v. Bridger Coal Co.*, 834 F. Supp. 352, 357 n. 6 (1993) ("four year limitations periods are provided for…conversion in subsection (a)(iv)(B)."); *Peter D. Holdings LLC v. Wold Oil Props., LLC*, No. 17-CV-212-R, 2020 WL 5406238, at *26 (D. Wyo. Aug. 12, 2020) ("A claim for conversion is subject to a four-year statute of limitations.").

The accrual of a conversion cause of action in Wyoming is governed by the discovery rule. *See* Wyo. Stat. Ann. § 1-3-106 ("[a] cause of action for the wrongful taking of personal property is not deemed to have accrued until the wrongdoer is discovered."). Thus, the four-year period begins to run when the plaintiff discovers—or reasonably should have discovered—the identity of the wrongdoer. This is consistent with Wyoming's broader status as a "discovery jurisdiction," where the statute of limitations is triggered when a plaintiff knows or has reason to know of the existence of a cause of action. *Amoco Prod. Co. v. EM Nominee*, 2 P.3d 534, 642 (Wyo. 2000).

Here, Mendocino discovered the identity of the wrongdoers (i.e., Defendants) regarding phase one—the non-payment for the First Load of scrap—in mid-November or early December of 2021. This occurred after Mendocino's and WRC's unsuccessful attempts to contact Defendants and obtain full payment for the First Load of scrap metal. The limitations period for those claims lapsed in mid-November or early December of 2025. Regarding phase two — Defendants' unauthorized taking of Mendocino's Remaining Scrap Metal from WRC's land — Mendocino discovered the identity of the wrongdoers in May of 2022. This occurred after Robert Pinoli inspected the WRC project site and spoke with Mr. Rimmasch. The limitations period for those claims lapsed in May of 2026.

Mendocino's proposed SAC adds a claim for unjust enrichment, however, that does not affect the statute of limitations analysis. "Traditionally and for good reasons, statutes of limitation are not controlling measures of equitable relief." *In re Lane*, 726 F. Supp. 3d 1305, 1319 (D. Wyo. 2024), *aff'd*, No. 24-8025, 2025 WL 1078245 (10th Cir. Apr. 10, 2025) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)). The quintessential distinction between legal and equitable relief is money damages are available in actions at law, *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993), and equitable relief is remedial in nature, *Hartford-Empire Co. v. United States*, 323

U.S. 386, 435 (1945). Here, Mendocino is only seeking money damages and is not alleging a contract existed between it and Defendants. Thus, its unjust enrichment claim is not purely equitable in nature, and the general catch-all provision under § 1-3-105(a)(iv)(C), for "an injury to the rights of the plaintiff, not arising on contract and not herein enumerated," applies.

Accordingly, at the time of the Court's Order and Judgment on June 1, 2026, Mendocino's claims, if they had not been filed already, were time-barred. Although the Court dismissed Mendocino's claims without prejudice, the dismissal was, for all practical purposes, a dismissal with prejudice, as any subsequent action by Mendocino would be time-barred. *See Gocolay v. New Mexico Fed. Sav. & Loan Ass'n*, 968 F.2d 1017, 1021 (10th Cir. 1992); *AdvantEdge Bus. Grp. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) ("a dismissal without prejudice can have the practical effect of a dismissal with prejudice if the statute of limitations has expired."); *Rodriguez v. Colorado*, 521 F. App'x 670, 671 (10th Cir. 2013) ("we treat a dismissal without prejudice as a dismissal with prejudice when the statute of limitations has run on the claims."). In the Court's June 1 Order, it identified several deficiencies and suggested that Mendocino refile if it could develop more facts to support its claim. Mendocino has done exactly that, and its proposed SAC pleads concrete facts addressing the Court's concerns. However, because the statute of limitations has run, Mendocino's opportunity to refile no longer exists. Denying Mendocino leave to amend now would convert a dismissal without prejudice into a final, irrevocable termination of Mendocino's meritorious claims. Such a result would be contrary to the spirit of the law, and correcting this error is precisely what Rule 59(e)'s manifest injustice prong is designed to accomplish.

## CONCLUSION

The Court's June 1 Order addressed only the pleading deficiencies in Mendocino's Amended Complaint and contemplated that Mendocino would have the opportunity to cure those deficiencies. It was not intended to operate as a final adjudication on the merits of Mendocino's claims. If allowed to stand, however, the Order would effectively transform a curable pleading defect into a dispositive ruling, foreclosing Mendocino's meritorious claims on a procedural technicality rather than their substantive merits. Rule 15(a)(2)'s liberal amendment standard, applied through Rule 59(e)'s procedural mechanism, supports avoiding this unjust result. Therefore, Mendocino respectfully requests the Court alter or amend its judgment, vacate that judgment, and grant it leave to file its proposed Second Amended Complaint in the instant action.

Dated this 29th day of June, 2026.

Respectfully Submitted,

By: */s/Andrew P. Reitman*
Andrew P. Reitman, #7-5946
HALL & EVANS, LLC
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202
Tel: (303) 628-3300
Email: reitmana@hallevans.com
**ATTORNEY FOR PLAINTIFF**
**MENDOCINO RAILWAY**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of June, 2026 a copy of the foregoing was sent via electronic mail to the following counsel of record:

Thomas Szott
The Bernhoft Law Firm, S.C.
2122 Warren Avenue, Suite 310
Cheyenne, WY 82001
Tel: (307) 275-8038
tszott@bernhoftlaw.com
*Attorney for Defendants*

*/s/Sara Parmenter*____________________