**Exhibit D**

Andrew P. Reitman, Esq., Wyo. #7-5946
HALL & EVANS, L.L.C.
1001 Seventeenth Street, Suite 300
Denver, Colorado 80202-2052
Telephone: 303-628-3300
Facsimile: 303-628-3368
Email: reitmana@hallevans.com

*Attorney for Plaintiff Mendocino Railway*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| MENDOCINO RAILWAY, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>HOPPER METALS, INC., a Wyoming corporation, and MICHAEL DIMICK, an individual<br><br>Defendants. | Case No. 1:25-cv-00225-SWS |

---

**DECLARATION OF JOHN RIMMASCH**

---

1. I am the former owner and principal of Wasatch Railroad Contractors ("WRC"). I have personal knowledge of the facts stated in this declaration and, if called as a witness, could and would testify competently to them.

2. In 2021, WRC was engaged by Mendocino Railway ("Mendocino") to perform work on Mendocino railcars located in Shoshoni, Wyoming.

3. WRC understood that scrap metal and components removed from Mendocino's railcars belonged to Mendocino, not WRC, except to the extent WRC was authorized to scrap or sell material for Mendocino's benefit and apply or remit proceeds as permitted by WRC's agreement with Mendocino.

**EXHIBIT D**

4. WRC did not have the authority to use Mendocino's scrap metal, or proceeds from Mendocino's scrap metal, to satisfy any of WRC's separate debts to Hopper Metals, Inc. ("Hopper"), Michael Dimick, or any other third party.

5. In or around April 2021, WRC had discussions with Hopper and Mr. Dimick concerning scrap metal from Mendocino's railcars.

6. Hopper picked up an initial load of scrap metal from Mendocino's railcars in or around July 2021. WRC understood that payment for that material was to be made for Mendocino's benefit.

7. After Hopper obtained that initial load, Mr. Dimick stated that Hopper would not pay the price previously agreed upon because WRC allegedly owed Hopper money on an unrelated matter.

8. I told Mr. Dimick and/or Hopper that the scrap metal belonged to Mendocino, not WRC, and that Hopper could not offset amounts owed for Mendocino's scrap metal against any separate debt allegedly owed by WRC.

9. Chief Financial Officer of WRC, CJ Luce, told Mr. Dimick and/or Hopper that WRC and Mendocino would not accept the reduced payment amount Hopper proposed for the first load.

10. After the first-load payment dispute, WRC did not authorize Hopper or Mr. Dimick to pick up any additional loads of Mendocino's scrap metal.

11. After the first-load payment dispute, WRC did not authorize Hopper or Mr. Dimick to enter WRC's property and remove any remaining Mendocino scrap metal.

12. WRC never sold, transferred title to, gifted, abandoned, or otherwise conveyed ownership of Mendocino's remaining scrap metal to Hopper or Mr. Dimick.

13. WRC never authorized Hopper or Mr. Dimick to keep Mendocino's remaining scrap metal without paying for it.

14. WRC never authorized Hopper or Mr. Dimick to sell Mendocino's remaining scrap metal and retain the proceeds, or to satisfy any separate debt allegedly owed by WRC.

15. In or around September 2021, I informed Mendocino that Hopper was the scrap dealer to whom WRC agreed to sell Mendocino scrap metal.

16. I also informed Mendocino that Mr. Dimick had agreed to pay spot value for the first load of Mendocino's scrap metal.

17. I understood that any such payment was to be made for Mendocino's benefit.

18. Mr. Dimick told me, in substance, that in the first load, he had taken approximately $7,500 worth of Mendocino scrap metal to Utah and sold it.

19. To my knowledge, none of the proceeds from that Utah sale of the first load were paid to WRC or Mendocino.

20. Hopper and Mr. Dimick did not provide WRC with a full accounting of the amounts, weights, sale prices, buyers, offsets, costs, or proceeds associated with Mendocino's scrap metal.

21. Hopper and Mr. Dimick did not pay the full agreed amount for the first load of Mendocino scrap metal.

22. Hopper and Mr. Dimick did not return Mendocino's remaining scrap metal.

23. Hopper and Mr. Dimick did not pay Mendocino or WRC the fair market value of Mendocino's remaining scrap metal.

24. I understand that Hopper later filed a document in WRC's bankruptcy case referencing approximately 160,000 pounds of mixed metals.

25. The approximately 160,000 pounds referenced in Hopper's bankruptcy filing exceeded the amount of the first load that WRC authorized Hopper to pick up.

26. The approximately 160,000 pounds referenced in Hopper's bankruptcy filing included Mendocino scrap metal that Hopper and Mr. Dimick were not authorized to take, sell, retain, or use as an offset against any debt allegedly owed by WRC.

27. WRC made demands or requests that Hopper and Mr. Dimick pay for or return Mendocino's scrap metal.

28. Hopper and Mr. Dimick did not comply with those demands or requests.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 29th day of June, 2026.

John Rimmasch