FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING
2026 AUG -4 PM 12: 59
MARGARET BOTKINS, CLERK
CASPER

**UNITED STATES DISTRICT COURT**
**DISTRICT OF WYOMING**

MENDOCINO RAILWAY, a California corporation,

Plaintiff,

v.

HOPPER METALS, INC., a Wyoming corporation, and MICHAEL DIMICK, an individual,

Defendants.

Case No. 25-CV-225-SWS

**ORDER DENYING PLAINTIFF'S COMBINED MOTION TO ALTER OR AMEND JUDGMENT AND FOR LEAVE TO AMEND COMPLAINT**

In its amended (and operative) complaint, Plaintiff Mendocino Railway alleged Defendants Hopper Metals and Michael Dimick unlawfully converted certain scrap metal belonging to Mendocino Railway. (ECF 6.) After the parties fully briefed the matter (ECF 14, 15, 18, 19), the Court granted Defendants' Rule 12(b)(6) motion to dismiss for Plaintiff's failure to assert a plausible claim on which relief could be granted. (ECF 20.) In conformity with Rule 58(b)(1)(C), the Clerk of Court also entered a judgment reflecting the dismissal on the same day. (ECF 21.)

Relying on Rules 59(e) and 15(a)(2), Mendocino Railway has now filed a Combined Motion to Alter or Amend the Court's Judgment and for Leave to Amend its First Amended Complaint. (ECF 22.) In short, Mendocino Railway wants the judgment set aside and the opportunity to amend its operative complaint in an attempt to cure the deficiencies that resulted in dismissal. (ECF 23.) It contends it conducted additional investigation into its claims after the dismissal and uncovered information allowing it to better state a claim for relief. (*Id.*) Defendants

oppose the motion, contending Mendocino Railway has brought nothing to the table that it didn't already know or have reason to know. (ECF 24.)

Having considered the parties' arguments and the record herein, and being otherwise fully advised, the Court determines Mendocino Railway's undue delay does not justify allowing it to reopen this case and amend its complaint.

**BACKGROUND**

The Court sets forth here only a limited factual and procedural summary necessary to understand the procedural question presented by Mendocino Railway's current motion.

Mendocino Railway is a railroad company that operates trains and railway cars. Hopper Metals is a scrapyard company that buys and sells scrap metals, including aluminum and steel, and Mr. Dimick is the president of Hopper Metals.

In the spring of 2021, Mendocino Railway contracted with a third party, Wasatch Railroad Contractors (WRC), whereby WRC would rebuild 50 of Mendocino Railway's coal railcars into passenger hotel cars. WRC began dismantling the railcars down to their flat bases by removing the valuable metal siding and components. The agreement directed WRC to sell the scrap metal removed from the railcars, with the proceeds of the scrap sales being applied to the cost of constructing the new hotel cars and any surplus owed to Mendocino Railway.

Mid-project, WRC experienced financial difficulties, halted work on the project, and closed its business. WRC also filed for bankruptcy. After closing its business, a valuable amount of scrap metal that had already been removed from Mendocino Railway's railcars remained in WRC's yard.

In May 2022, the President of Mendocino Railway, Robert Pinoli, visited WRC's yard to investigate the status of the railcars and scrap metal. He found all 50 railcars in various states of

disassembly but determined a large amount of the scrap metal that had been removed from the railcars was not present in WRC's yard.

Mendocino Railway filed this suit in September 2025 (ECF 1), and it amended its complaint once as a matter of course under Federal Rule of Civil Procedure 15 before Defendants had filed any response (ECF 6.) In the amended complaint, Mendocino Railway alleged it "subsequently learned that the missing [scrap metal] had been transferred to [Defendants] sometime in the fall of 2021." (ECF 6 ¶ 23.) It alleged one claim of state-law conversion against Defendants for obtaining and not returning the missing scrap metal. (ECF 6 ¶¶ 27-31.)

On June 1, 2026, the Court granted Defendants' 12(b)(6) motion to dismiss after determining the amended complaint failed to plausibly plead factual allegations that could establish the first two elements of conversion—that the plaintiff held legal title over and the right to possess the property. (ECF 20.) Because Mendocino Railway alleged that WRC had express authority, and even a contractual duty, to sell the scrap metal it stripped from the railcars, the allegations that Mendocino Railway held legal title and the right of possession to the "missing" scrap metal that "had been transferred" to Defendants, a metal scrapping business, were implausible. (*Id.* pp. 3-7.)

Also on June 1, 2026, the Clerk of Court entered a judgment in Defendants' favor pursuant to Federal Rule of Civil Procedure 58 based on the dismissal order. (ECF 21.)

Twenty-eight days later, Mendocino Railway filed the instant motion to vacate the dismissal under Rule 59(e) and asking for leave to file a second amended complaint. (ECF 22, 23.) It contends that after the dismissal, "Mendocino has uncovered additional facts and has repleaded its complaint to address the deficiencies identified by the Court and support a claim for conversion as well as an additional claim for unjust enrichment." (ECF 23 p. 2.) It further argues that because

the applicable statute of limitations expired between the filing of its original complaint and the Court's dismissal, its "only course is to move the Court to alter or amend its Judgment under Rule 59(e) and to seek leave to file its proposed SAC under Rule 15(a)(2)."[1] (*Id.*) Defendants oppose the motion by arguing the "additional facts" that Mendocino Railway "uncovered" following the dismissal were known or should have been known when this lawsuit was first filed. (ECF 24.)

## STANDARD OF ADJUDICATION

The parties first question the appropriate standard to apply here. (ECF 23 pp. 4-6, 9-11; ECF 24 pp. 2-11; ECF 25 pp. 2-4.) The question arises because a party must generally meet a higher standard to obtain relief under Rule 59(e) versus obtaining relief under Rule 15(a)(2). Relief from a judgment under Rule 59(e) is available where "the court has misapprehended the facts, a party's position, or the controlling law." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)). In contrast, under Rule 15(a)(2), the Court "should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2).

The Tenth Circuit "has repeatedly and unequivocally held that, '[o]nce judgment is entered, the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b).'" *The Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005) (alteration in original) (quoting *Seymour v. Thornton*, 79 F.3d 980, 987 (10th Cir. 1996), and collecting cases); *see Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989) ("After a motion to dismiss has been granted, plaintiffs must first reopen the case pursuant to a motion under Rule 59(e) or Rule 60(b) and then file a motion under Rule 15" for leave to amend.). "[E]ven though Rule 15(a) states that 'leave [to amend] shall be

[1] *But see* Wyo. Stat. § 1-3-118.

freely given when justice so requires,' 'this presumption is reversed in cases ... where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed.'" *Tool Box*, 419 F.3d at 1087 (alteration in original) (quoting *Bressner v. Ambroziak*, 379 F.3d 478, 484 (7th Cir. 2004)).

In *BLOM Bank SAL v. Honickman*, 605 U.S. 204 (2025), the U.S. Supreme Court discussed this scenario with regard to a Rule 60(b) motion:

> Relief under Rule 60(b)(6) requires extraordinary circumstances. That standard does not become less demanding when a Rule 60(b)(6) movant also hopes to amend his complaint. Rather, a party seeking to reopen his case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply.

*Id.* at 210. Thus, the Supreme Court determined in *Honickman* that the movant would have to satisfy both the normal Rule 60(b) standard and then the normal Rule 15(a) standard, and, indeed, the Court reversed the Second Circuit's conclusion that a "hybrid standard" should apply to such situations. *Id.* at 214. "It is Rule 60(b)'s standard—and *only* Rule 60(b)'s standard—that applies when a party seeks relief from final judgment." *Id.*

In an unpublished decision, though, a panel of the Tenth Circuit recently determined that a motion seeking to reopen a case under Rule 59(e) with an intent to replead is different. In *Yellow Corp. v. Int'l Bhd. of Teamsters*, No. 24-3111, 2025 WL 3089412 (10th Cir. Nov. 5, 2025), the Tenth Circuit said a motion seeking relief from a judgment under Rule 59(e) is not actually subject to the Rule 59(e) standard but is instead only to be tested by the more liberal standard of Rule 15(a)(2). More specifically, the Tenth Circuit agreed

> with the Seventh Circuit that "Rule 15(a)(2) provides the standard for evaluating post-judgment motions for leave to amend in situations, like this one, where a district court enters a judgment at the same time it first dismisses a case."

*Yellow*, 2025 WL 3089412, at *5 (quoting *Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 1017,

1033 (7th Cir. 2024)).[2] Thus, where the district court enters a judgment at the same time it dismisses a case, the movant seeking to reopen and replead the matter is "still required to file under Rule 59(e) [within 28 days of the judgment] as a procedural mechanism, [but] the standard for granting the motion is set by Rule 15(a)(2)." *Id.*

---

[2] In quoting *Taylor*, The Tenth Circuit followed the Seventh Circuit's lead in suggesting that the district court entering judgment at the same time as the dismissal order was an important consideration weighing on the appropriate standard to apply. Indeed, in *Taylor*, the Seventh Circuit said that a "district court cannot nullify the liberal right to amend under Rule 15(a)(2) by entering judgment prematurely at the same time it dismisses a complaint that would be amended." *Taylor*, 110 F.4th at 1033 (quoting *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015)). The Seventh Circuit did not explain its assertion that entering judgment at the time of the dismissal order was "premature." And in *Gonzalez-Koeneke*, the Seventh Circuit also said, "When the district court has taken the unusual step of entering judgment at the same time it dismisses the complaint, the court need not find other extraordinary circumstances and must still apply the liberal standard for amending pleadings under Rule 15(a)(2)." *Gonzalez-Koeneke*, 791 F.3d at 807 (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 521 (7th Cir. 2015)). Entering a judgment at or near the time of the dismissal order hardly seems an "unusual step" in light of Rule 58(b)(1)(C), which directs the clerk of court to, "***without awaiting the court's direction, promptly prepare, sign, and enter the judgment*** when … the court denies all relief." Fed. R. Civ. P. 58(b)(1)(C) (emphasis added); *see Spinelli v. Coherus Biosciences, Inc.*, 167 F.4th 1274, 1279 n.2 (10th Cir. 2026) ("District courts should enter a judgment in a separate document when dismissing a case in accordance with Rule 58."); *Warren v. Am. Bankers Ins. of FL*, 507 F.3d 1239, 1244 (10th Cir. 2007) ("In this case, confusion ensued because the district court failed to enter a separate judgment following entry of its dismissal order.").

The Tenth Circuit in *Yellow* stated that entering judgment at the same time as a dismissal order "differs sharply from our prior cases where 'the moving party had an opportunity to seek the amendment before entry of judgment but waited until after judgment before requesting leave.'" *Yellow*, 2025 WL 3089412, at *5 (quoting *Tool Box*, 419 F.3d at 1088). But the discussion cited in *Tool Box* did not address opportunities to amend between dispositive orders and the resulting judgment (indeed, the clerk of court entered judgment in *Tool Box* one day after the district court entered its summary-judgment order); instead it discussed denying amendment where, like here, an opportunity to amend existed even before the dispositive order. *See Tool Box*, 419 F.3d at 1088 ("[W]e have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling.") (quoting *Vielma v. Eureka Co.*, 218 F.3d 458, 468 (5th Cir. 2000)).

It appears a clerk of district court's attempt to comply with Rule 58 is in tension with the Tenth and Seventh Circuits' suggestion that entering a judgment at the same time (or, more accurately, on the same day) as a dismissal order might be improper or unusual, and the clerks of district courts might benefit from some explanation or guidance on this topic from the courts of appeal.

Here, in apparent compliance with Rule 58(b)(1)(C), the clerk of court entered a judgment on the same day that the Court entered its Order Granting Defendants' Rule 12(b)(6) Motion to Dismiss. (ECF 20, 21.) Though *Yellow* is an unpublished, non-binding opinion that may only be cited for its persuasive authority, the Court feels compelled to apply its principles and examine Mendocino Railway's current motion under Rule 15(a)(2)'s standard.

When a party's one free amendment as a matter of course has either been used (as here) or the time for exercising it has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (quoting *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993)).

## DISCUSSION

In short, Mendocino Railway's proposed second amended complaint asserts that Defendants previously admitted to receiving or obtaining far more railcar scrap metal from WRC than the one load WRC and Defendants agreed upon, thereby suggesting Defendants did not lawfully obtain or possess the additional scrap metal while Mendocino Railway did retain title and the right of possession. (*See* ECF 23-2 pp. 3-6; ECF 12 pp. 7-8; ECF 23-5.)

This additional information Mendocino Railway seeks to include in its proposed second amended complaint was known or could have been known several years ago, well before Mendocino filed suit and well before the Court issued its dispositive order. Consequently, Mendocino Railway's request to reopen this case and amend its complaint will be refused based

on its undue delay.

In this motion, Mendocino Railway explains its post-dismissal investigation thusly:

> 8. After the Court's June 1, 2026, Order, Mendocino interviewed Mr. John Rimmasch, former owner of Wasatch Railroad Contractors ("WRC"), conducted further investigation, and obtained supplemental information responsive to the Court's concerns.
>
> 9. Mr. Rimmasch provided additional details regarding the agreement between WRC and Defendants to sell Mendocino's scrap metal and how Defendants wrongfully obtained possession of Mendocino's scrap metal, sold it to a scrap yard in Utah, and retained the proceeds therefrom.
>
> 10. Based on further review, synthesis, and confirmation of witness information and documents, Mendocino has prepared its SAC addressing the deficiencies identified by the Court. (Exhibit A).

(ECF 23 pp. 3-4.) Mendocino Railway included a declaration from John Rimmasch with its motion. (ECF 23-5.) Mendocino Railway has not suggested it was unable to interview Rimmasch to obtain these "additional details" sometime before filing its lawsuit or before the Court's dismissal order. (*See* ECF 23.) Indeed, Rimmasch states in his declaration that he first informed Mendocino Railway about the situation involving Defendants in September 2021 (ECF 23-5 p. 2), about four years before this lawsuit was filed.

Additionally, to buttress its motion and its proposed second amended complaint, Mendocino Railway attached a document that was submitted by Defendant Dimick to the U.S. Bankruptcy Court for the District of Wyoming concerning WRC's bankruptcy case. (ECF 23-1, 23-4.) But this document was filed in WRC's bankruptcy case in January 2022, more than three years before Mendocino Railway filed this lawsuit, and Mendocino Railway does not suggest it could not access the document previously. (*See* ECF 23.)

It is concerning that Mendocino Railway waited until after dismissal and judgment to seek information surrounding the missing scrap metal that "had been transferred to [Defendants]

sometime in the fall of 2021" (Am. Compl. ¶ 23), information that weighs on the first two elements of its conversion claim and information that appears to have been available to Mendocino Railway several years before filing suit. Instead, Mendocino Railway delayed until it, Defendants, and the Court had all expended valuable resources addressing the inadequately-pled amended complaint. Even when Defendants called into question the adequacy of the amended complaint, Mendocino Railway chose to litigate the motion to dismiss, only seeking to substantively address the matter after the Court had granted the dismissal motion in Defendants' favor. "At some point, … delay will become undue, placing an unwarranted burden on the court, or will be become prejudicial, placing an unfair burden on the opposing party." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (quoting *USX Corp. v. Barnhart*, 395 F.3d 161, 167 (3d Cir. 2004)). Mendocino Railway's unexplained delay in waiting until after the Court examined the parties' arguments and granted dismissal (almost four months after the motion was filed) to investigate information that has been available for several years is unjustified and constitutes undue delay. "The district court does not serve as a legal advisor to the parties, nor is a dispositive motion a 'dry run' for the nonmovant to 'wait and see' what the district court will decide before requesting leave to amend." *Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018); *see Minter*, 451 F.3d at 1206 ("[U]nexplained delay alone justifies the district court's discretionary decision.") (alteration in original) (quoting *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir. 1994)).

Finally, while the Court applies the Rule 15(a)(2) standard in accordance with *Yellow*, the *Yellow* decision offers Mendocino Railway no support in its request for leave to amend. There, Plaintiff Yellow received "substantial productions of documents" a few days before the district court entered its dismissal order. *Yellow*, 2025 WL 3089412, at *3. Some of those produced documents directly weighed on the district court's reasoning for dismissal, but Yellow's lawyers

had not had a fair opportunity to review the hefty discovery and incorporate it into a request to amend until after the district court had dismissed and entered judgment. *Id.* at *3-4. The Tenth Circuit held "that the district court erred by failing to grant leave to amend because Yellow did not have a reasonable opportunity to amend its complaint to include new allegations based on the March document production." *Id.* at *4.

There are not similar circumstances at play here that would warrant a similar outcome. The additional information on which Mendocino Railway relies was available years before it filed suit; it was not divulged mere days before dismissal. The opportunity for Mendocino Railway to obtain and incorporate the additional information has existed since at least 2022. (*See* ECF 23 p. 10 (Mendocino Railway asserting it "discovered the identity of the wrongdoers in May of 2022" when its President, Robert Pinoli, visited WRC's yard). *Yellow's* reasoning does not support Mendocino Railway's request to amend.

## CONCLUSION AND ORDER

Even applying Rule 15(a)(2)'s standard to Mendocino Railway's combined motion to reopen the case under Rule 59(e) and for leave to amend, justice does not support the request to amend. Mendocino Railway unduly delayed in obtaining and incorporating the "additional information" into this lawsuit.

**IT IS THEREFORE ORDERED** that Mendocino Railway's Combined Motion to Alter or Amend the Court's Judgment and for Leave to Amend its First Amended Complaint (ECF 22) is **DENIED**.

**ORDERED:** August 3rd, 2026.

Scott W. Skavdahl
United States District Judge